AO 106 (Rev. 04/10) Application for a Search Warrant s/Travis Leverett 03-02-2022

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. M-22- 148 -STE
a Black Samsung Galaxy A32 cellular telephone with )
IMEI: 350647481535999 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |
| 21 U.S.C. § 846 | Drug Conspiracy |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

ERIC B. COBURN, SPECIAL AGENT
Printed name and title

Sworn to before me and signed in my presence.

Date: **Mar 2, 2022**

_____
Judge's signature

City and state: Oklahoma City, Oklahoma        SHON T. ERWIN, U.S. MAGISTRATE JUDGE
Printed name and title

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION UNDER RULE 41 FOR A WARRANT

I, Eric B. Coburn, a Special Agent with Homeland Security Investigations (HSI), having been duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with HSI, and I have been employed with HSI since May 2009. I am currently assigned to the HSI office in Oklahoma City, Oklahoma (HSI Oklahoma City). During my time in law enforcement, I have successfully completed the Federal Criminal Investigator Training Program and the Immigration and Customs Enforcement (ICE) Special Agent Academy at the Federal Law Enforcement Training Center (FLETC), in Glynco, Georgia.

2. As part of my drug-related investigations, I have coordinated the execution of numerous search and arrest warrants, coordinated and monitored Title III wiretaps, conducted physical surveillance, coordinated and executed controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. Through my training and experience, I have become familiar with some of the methods by which illegal drugs are imported, distributed, and sold, as well as the means used by drug dealers to disguise the source and nature of their profits including money laundering and structuring schemes. I have also gained experience in the conducting of such investigations through attending

mobile forensics training, financial investigations training, cyber-crimes investigations training, drug investigations training, seminars, and everyday work. In light of this training and experience, I know the following:

      a.    I am aware of the methods in which drug couriers and distributors associated with DTOs often use electronic devices, to include but not limited to, computers, tablets, cell phones, and other electronic storage devices, to communicate and execute electronic transactions which can, in turn, create automatic records and documentation of the transactions;

      b.    I am aware that that it is particularly common for individuals engaged in the sale and distribution of illegal narcotics to use electronic devices to track and document financial transactions;

      c.    I am aware that individuals engaged in the sale and distribution of illegal narcotics will frequently keep contact information and other evidence of their dealings with DTOs on cellular phones, computers, tablets, and other storage devices and that they often keep such electronic devices on or near their person.

      d.    I am also aware that individuals engaged in the sale and distribution of illegal narcotics will use cellular phones to further their financial businesses using digital communication, including, but not limited to, e-mail and instant messaging; and

      e.    I am aware that to accomplish the overall goals of the DTO, individuals engaged in the sale and distribution of illegal narcotics utilize banks, financial institutions, and their attendant services, which in today's day and age, are routinely accomplished through the use of electronic devices like cellular phones, that may be used

in conjunction with other electronic devices and the Internet.

3. This Affidavit is based upon my personal investigation and upon information received from other law enforcement officers and agents and may not be inclusive of all evidence or information available or of all facts known to me relative to this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. I make this Affidavit in support of an application for a search warrant authorizing the examination of a cellular electronic device, specifically a black Samsung Galaxy A32, IMEI: 350647481535999 (**Target Device**), as further described in **Attachment A** (physical description) for evidence of violations of federal law to wit: 21 U.S.C. § 841(a)(1) (possession and distribution of a controlled dangerous substance) and 21 U.S.C. § 846 (attempt and conspiracy), as described further in **Attachment B** (description of items to be seized). The **Target Device** is currently securely stored at the HSI Oklahoma City Office, within the Western District of Oklahoma. The applied-for warrant would authorize the forensic examination of the **Target Device** for the purpose of identifying electronically stored data particularly described in **Attachment B**.

## PROBABLE CAUSE

5. On December 28, 2021, OBN Agents D. Morgan and C. Gentry conducted a traffic stop on a black Chevrolet Impala, bearing Nevada License Plate 980J70, driving eastbound on Interstate 40 in Canadian County, Oklahoma, for failing to signal when changing lanes and speeding.

3

6. After pulling the car over, Agent Morgan approached the vehicle on the passenger side and contacted the passenger, Mone Yvette McKay (McKay), and the driver Kiera Sade McPherson (McPherson).

7. While talking with the occupants of the vehicle, Agent Morgan noticed that McKay was holding a newly lit cigarette near the window, which was only rolled down part way. As Agent Morgan asked McPherson for her driver's license, McKay picked up another newly lit cigarette. At that point, McKay was holding a newly lit cigarette in each hand. McKay's actions of holding two lit cigarettes appeared to be an attempt to mask the odor emanating from the passenger compartment of the vehicle.

8. McKay asked Agent Morgan for permission to extinguish the cigarettes outside of the vehicle. Agent Morgan allowed her to do so while he was waiting for McPherson to get her license and the registration for the vehicle. While speaking with McPherson at the vehicle, Agent Morgan observed the odor of raw marijuana emanating from inside of the vehicle.

9. While reviewing the documents provided by McPherson, Agent Morgan noticed that McPherson was from New York and that the vehicle they were in had been rented. Closer inspection of the rental agreement revealed that the agreement was for a different vehicle. The rental agreement provided by McPherson was for a 2019 Impala with Tennessee tag 2Z84W3 and was rented by Shawn Smiley on December 25, 2021, at 0834 PM at LAX airport and returned on December 26, 2021, at 530 PM at LaGuardia Airport in New York.

10. During his conversation with McPherson, Agent Morgan determined that the explanation provided by McPherson did not coincide with the timeframe of her travel or the documentation she had provided. Once Agent Morgan completed his conversation with McPherson, Agent Morgan returned to the vehicle and spoke with McKay about their trip to California and the purpose of their visit. The explanation provided by McKay was different from the one provided by McPherson.

11. At that point, Agent Morgan provided McPherson a written warning and returned her documents to her. Prior to McPherson exiting the vehicle, Agent Morgan asked McPherson if they were transporting anything illegal in the car and McPherson said no. Agent Morgan also asked McPherson if they had been around marijuana recently. McPherson advised that they had visited some dispensaries in California. Upon the conclusion of their conversation, Agent Morgan advised McPherson that he was going to conduct a probable cause search of the vehicle, because he smelled the odor of marijuana emanating from the vehicle.

12. Prior to conducting the search, Agent Morgan asked McKay to step out of the vehicle and requested that she have a seat in his vehicle while the vehicle was searched. During the search of the vehicle, Agent Morgan was assisted by Agent Gentry. Agent Morgan located two marijuana dispensary bags in a suitcase that contained three jars of marijuana and marijuana cigarettes. Agent Gentry also found an open jar of marijuana in another suitcase inside of the vehicle.

13. Agent Morgan discovered several air fresheners, commonly used to mask the odor of narcotics as well as and several cigar wrappers inside of the vehicle. While

searching the vehicle, Agent Gentry located a plastic bag that contained three, kilogram size, vacuum sealed packages of suspected cocaine. The packages were bundled and sealed in a manor constant with the packaging of illegal narcotics. As the Agents searched the car, McPherson could be heard telling McKay, on the interior audio/video recording device in Agent Morgan's patrol vehicle saying, "They found it," as Agent Gentry removed the package from their vehicle.

14. While officers searched the vehicle and McPherson and McKay sat in the patrol car, McPherson appeared to receive text messages and phone calls on her cell phone. The **Target Device** was seized by officers off McKay's person incident to her arrest. In addition to the marijuana, suspected cocaine, and **Target Device**, officers also seized a black Apple i-Phone 7, model A1660, FCC-ID BCG-E3085A, belonging to McPherson.

15. Agent Morgan transported the evidence to OBN headquarters so that the suspected narcotics could be field tested and weighted. Two of the bundles tested positive for cocaine and the third package, which had the Audi symbol stamped into it, did not test positive for cocaine. The total estimated weight of the packages was 3,455.42 grams.

16. Based on the weight and type of narcotics discovered, HSI Special Agents were contacted to assist in the investigation. On February 8, 2022, Agent Morgan met with Special Agent (SA) Coburn and turned the **Target Device** and the black iPhone over

to SA Coburn to be secured at the HSI Oklahoma City Office while a federal search warrant was obtained for the devices.[1]

17. As a result of the traffic stop, McPherson and McKay were arrested and transported to the Canadian County Jail for Aggravated Trafficking in Cocaine. They were both indicted by the Federal Grand Jury for the Western District of Oklahoma on January 18, 2022. They are awaiting trial in front of U.S. District Judge Jodi Dishman in case number CR-22-015.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Cellular phones, and specifically an iPhone, have the ability to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, access the Internet, and to use manufacturer installed, as well as downloaded, applications to conduct basic computing and data services. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

27. There is probable cause to believe that things that were once stored on the **Target Device** may still be stored there, at least for the following reasons:

---

[1] An application for a search warrant for the search of the Samsung device seized off McKay's person is being submitted together with this application.

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer or cellular device the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer or cellular phone's operating system may also keep a record of deleted data in a "swap" or "recovery"

c. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

28. *Forensic evidence.* As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Target Device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Device** because:

8

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic

9

device is evidence may depend on other information stored on the device and the application of knowledge about how that particular device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

30. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

31. Based on the foregoing, I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the **Target Device** described in **Attachment A** to seek the items described in **Attachment B**.

Respectfully submitted,

_____
ERIC B. COBURN
Special Agent
Homeland Security Investigations

Sworn and subscribed to before me this 2nd day of March, 2022.

_____
SHON T. ERWIN
United States Magistrate Judge
Western District of Oklahoma

11

## ATTACHMENT A

The **Target Device** is currently located in the custody of Homeland Security Investigations at 3625 NW 56th Street, Third Floor, Oklahoma City, Oklahoma 73112 (Western District of Oklahoma). The **Target Device** was locked, or password protected at the time of seizure, preventing investigators from obtaining more specific identifying information for the device.

1. Black Samsung Galaxy A32, IMEI: 350647481535999.



## ATTACHMENT B

All records on the Target Device(s) described in Attachment A that relate to violations of law, including, specifically 21 U.S.C. § 841(a)(1), possession and distribution of a controlled dangerous substance and 21 U.S.C § 846, conspiracy to possess and distribute drugs. Your Affiant believes there are possibly text messages, contact information, photographs or other items communicated within these devices that provide information about illegal activities which involve **Mone Yvette MCKAY** and/ or possible co-conspirators including:

- a. Stored communications which are voice recordings/messages, text messages (SMS) and multimedia messages (MMS), emails and attachments, read or unread which relate to and provide evidence of criminal activity described in this affidavit;

- b. Stored communications voice or text based located within downloadable messaging applications or social media applications messaging websites and applications used to conduct or solicit illegal financial transactions, to include: the storage, collection, transmission, distribution, and laundering of proceeds derived from criminal activity.

- c. All internet usage history that may reveal evidence of money laundering and illegal financial transactions, such as the identification of financial institutions, account numbers, monetary transactions, internet mail communications, electronic payment receipts, etc.;

- d. Call logs/histories depicting incoming/outgoing numbers dialed to and from the

        above described telephone device which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

e.     Internet World Wide Web (WWW) browser files including browser history, browser cache, browser favorites, auto-complete form history and stored passwords;

f.     Contacts, address books and calendars, customer lists and related identifying information such as names, nicknames and/or monikers within the above described telephone device which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

g.     Photographs, audio/video recordings with their associated metadata relating to and which provide evidence of the above described criminal activity and further described in this affidavit;

h.     Stored location information including global positioning system (GPS) data indicating coordinates, way points, tracks and locations in which the phone has traveled; and,

i.     Data and user records/information, password(s) that would assist in identifying/confirming the owner(s)/user(s) of the above referenced property to be searched.

Law enforcement may utilize **Mone Yvette MCKAY's** biographical identification, to include facial recognition, finger and/or thumb print to decrypt and unlock the devices.